IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH E. WELSH, ET AL. | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  05-CV-6838 |
| LINDA MALE, ET AL. | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OPINION & ORDER**

GOLDEN, J.                                                                                                MARCH 21, 2007

Before the Court are defendants' motions to dismiss several counts of plaintiffs' complaint for failure to state a claim, and a related request to strike the Complaint.[1]  The Court will grant defendants' request to strike the complaint, with leave to amend consistent with this opinion should plaintiff choose to proceed.[2]  The Court will also grant the motion as to the procedural due process property interest claim (part of Count II), and the Section 1985(3) claim and related Section 1986 claim (Counts IV and V).  The Court will deny the motion as to the procedural due process liberty interest claim (part of Count II), and the emotional distress claims (Counts VI and VII).

MOTION TO STRIKE

Embedded in defendants' motion to dismiss is a request that the Court strike the complaint under Federal Rule of Civil Procedure 12(f) for going beyond Rule 8(a)(2)'s

---

[1] Defendant Philip Mitman filed a motion separate from the motion to dismiss the several other defendants filed.  Because the Court has confirmed with defense counsel that Mitman's motion is identical to the motion the other defendants filed, the Court will refer to the motions as a single motion and grant identical relief to all defendants.

[2] Because the loss of consortium claim is the only count that plaintiff Sharon J. Davis asserts, the Court will refer to the complaint as "plaintiff's" for the remainder of this memorandum.

requirement of a "short and plain statement" of the facts entitling plaintiff to relief.  Defendants argue that the length of the complaint and specificity of the facts pled therein will require a time consuming investigation in order to provide a sufficient answer, when such investigation is more appropriately undertaken during the discovery process.

Motions to strike are generally disfavored.  See Coffman v. Wilson Police Dept., 739 F. Supp. 257, 262 (E.D. Pa. 1990).  But several courts have stricken complaints briefer than plaintiff's, which is 71 pages and 235 paragraphs.  See, e.g., Burks v. City of Philadelphia, 904 F. Supp. 421, 424 (E.D. Pa. 1995) (striking a 36 page, 128 paragraph complaint).[3]  Like the complaint in Burks, plaintiff's filing contains extended discussion of incidents spanning the course of his employment, including repeated references to Easton's adoption of billing software, see Compl. at ¶¶ 29-40, 52-64, and a multi-page digression concerning plaintiff's role in events leading to the arrest of an individual who is not a party to this lawsuit.  See Compl. at ¶¶ 65-76.  These examples are but two of many in a complaint that "reads more like a novel than the legal pleading it purports to be."  Burks, 904 F. Supp. at 424.

A "short and plain statement" of facts "is all that is both expected and required as the case moves into the discovery stage because the rules allow the parties, through the discovery process, to obtain the necessary details to support their claim or defense."  Id.  To allow the complaint to proceed as filed would be to "accelerate the function of discovery to the pleading stage."  Brejack, 2004 WL 377675, at *3.  The Court will therefore grant defendants' request to strike the complaint in its entirety, with leave to amend in compliance with the Federal Rules and

---

[3] See also Brejack v. County of Bucks, 2004 WL 377675, at *3 (E.D. Pa. Jan. 28, 2004) (216 paragraphs); Drysdale v. Woerth, 1998 WL 966020, at *2 (E.D. Pa. Nov. 18, 1998) (96 paragraphs); Nagel v. Pocono Med. Ctr., 168 F.R.D. 22, 23 (M.D. Pa. 1996) (184 paragraphs).

consistent with this opinion.[4]

The Court "has labored its way through the quagmire of distracting detail and redundant rhetoric in an attempt to cull the gravamen of [plaintiff's] claims," and "believes it can rule on certain features of Defendants' motion because these issues are likely to reappear at a later phase of this litigation." Burks, 904 F. Supp. at 424.

## FACTS[5]

Plaintiff Joseph E. Male worked as an Assistant Business Administrator for the City of Easton from January 31, 2001 through January 2, 2004. Defendants are various Easton officials, including current Easton Mayor Philip B. Mitman, Michael P. McFadden, who served as interim mayor in 2003, and current and former members of the Easton City Council. Plaintiff supported political opponents of defendants Mitman and McFadden during their respective mayoral campaigns, as well as a political opponent of defendant Michael P. Fleck's son in Easton's 2003 Democratic mayoral primary.

Shortly after defendant Fleck's son was defeated in the mayoral primary, Fleck, then Easton's treasurer, went before the City Council and proposed to take control of plaintiff's staff. Plaintiff stated in a newspaper article that he believed defendant Fleck's proposal was in retaliation for his support of Fleck's son's opponent in the mayoral primary. After reading plaintiff's suggestion, defendant City Council member Timothy D. Pickel criticized plaintiff's "stupid a-- comments" in the local media, and suggested that plaintiff had committed perjury in

---

[4] This litigation has been stayed because of health complications of plaintiff's counsel. The Court has exercised its authority to rule on the motion to dismiss because it was fully briefed prior to counsel's unfortunate health issues. The time to amend will therefore not begin to run until the stay is lifted.

[5] Because this matter is before the Court on a motion to dismiss, the Court takes all facts in plaintiff's complaint as true. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

an unrelated litigation involving the City of Easton.

Beginning in September 2003, top Easton city officials, including plaintiff, met to discuss the city budget. During one meeting, defendant Pickel stated his intention to "get" plaintiff. The Easton City Council took a preliminary vote to eliminate plaintiff's job during a subsequent meeting that plaintiff had left early.

In July of 2003, plaintiff met with defendants McFadden and William K. Murphy, the City Solicitor, and complained that he was being harassed in retaliation for defending two Easton city employees from gender and race discrimination. Plaintiff filed a formal grievance under Easton's anti-discrimination policy on December 12, 2003, after defendants McFadden and Murphy failed to take any action in response to plaintiff's complaint. Plaintiff's grievance was still pending when he was terminated on January 2, 2004. His termination came without written analysis of the reasons for it, despite a city ordinance requiring such analysis. Easton's anti-discrimination policy also provides that employees are not to be terminated during an investigation of a grievance.

## STANDARD FOR A MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows courts to screen out cases "where a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-12 (3d Cir. 1999). The Third Circuit Court of Appeals instructs that "the complaint will withstand a Fed. R. Civ. P. 12(b)(6) attack if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery." Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124-25 (3d Cir.

1998).  In deciding a motion to dismiss, a court is required to accept all of the plaintiff's factual allegations as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Thus, a court should grant a motion to dismiss only when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  In resolving a motion to dismiss, the court must primarily consider the allegations contained in the complaint, although matters of public record, orders, and exhibits attached to the complaint may also be considered.  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

## ANALYSIS

1. Due Process Property Interest Claim

Plaintiff alleges that his termination violated his property interest in continued employment without due process.  Whether plaintiff has "a legitimate entitlement to–and hence a property interest in–his government job is a question answered by state law."  Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006).  Plaintiff's claim fails because, as he concedes in his brief, he is an at-will employee.  Pennsylvania law "is clear that an at-will employee does not have a legitimate entitlement to continued employment because [he] serves solely at the pleasure of [his] employer."  Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005).  Plaintiff therefore did not have a due process property interest in his position as Assistant Business Administrator.

Plaintiff presents two arguments in support of his position.  He first claims that, although he is an at-will employee, he still has a protected property interest in retaining employment because his actions in defense of Easton employees suffering gender and racial discrimination give rise to a public policy exception to the presumption of at-will employment.  Plaintiff

primarily relies on Weaver v. Harpster, 885 A.2d 1073 (Pa. Super. Ct. 2005), which held that a public policy exception exists where an at-will employee is the subject of sexual harassment and her employer does not qualify as an employer under the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 953(b).  Weaver, 885 A.2d at 1074.

The facts of Weaver are crucially different from the present dispute.  The issue in Weaver was not whether plaintiff had a protected due process property interest in her employment, but whether she had any remedy at all.  The question came to the Weaver court after the plaintiff sought to maintain a common law claim of wrongful discharge because she could not sue her employer under the PHRA, as her employer had less than four employees.  Id.  The trial court sustained defendants' preliminary objection to plaintiff's wrongful discharge claim on the grounds that there is no common law cause of action against an employer for the termination of an at-will employee.  Id. at 1076.  The trial court also granted defendants' preliminary objection to plaintiff's PHRA claim because defendant had fewer than four employees, thus leaving plaintiff without a remedy.  Id.  The Weaver court created a public policy exception to the presumption of at-will employment in this narrow set of circumstances, finding that preventing "an employee who is alleging sexual harassment from pursuing her claim in court only because her employer has less than four employees appears a direct contravention of clear public policy."  Id. at 1077.

Plaintiff's claim in the present case does not suffer from the technicalities that beset the Weaver claim.  Indeed, plaintiff asserts a PHRA claim in count I of his complaint that defendants do not challenge in their motion to dismiss.  There is thus no danger that plaintiff will be unable to have his claims heard, and no reason to create a public policy exception.

Plaintiff also attempts to revive his procedural due process claim by arguing that the provision of the Easton anti-discrimination policy forbidding adverse employment action during the pendency of a grievance investigation gives rise to a protected property right.  In support of this argument, plaintiff cites Keim v. County of Bucks, 275 F. Supp. 2d 628 (E.D. Pa. 2003).  Keim and the case it relies on are unhelpful to plaintiff because they involve employees in materially different employment situations.  In Keim, the court found a protected property interest existed where plaintiff was employed under a collective bargaining agreement that forbid even disciplinary action against him without "just cause."  Id. at 634.  Keim based its holding in part on Gilbert v. Homar, 520 U.S. 924 (1997), a case involving a tenured professor.  Keim, 275 F. Supp. 2d at 633.  Unlike a union employee or a tenured professor, plaintiff in this case is an at-will employee with no "legitimate entitlement to continued employment."  Elmore, 399 F.3d at 282.  The existence of an anti-discrimination policy cannot create a legitimate entitlement to continued employment when plaintiff, as an at-will employee, has no such entitlement in the first instance.

    2.    Due Process Liberty Interest Claim

Plaintiff also seeks recovery on the grounds that his termination violated his liberty interest in his reputation and ability to earn a living in his chosen profession without due process.  A public employee with no protected property interest in his employment may still present a liberty interest claim for a "stigma-plus"[6] due process deprivation if he alleges that his employer created a defamatory impression of him during the course of his termination.  Hill, 455 F.3d at

---

[6] Liberty interest allegations in the public employment context are known as "stigma-plus" claims.  See Codd v. Velger, 429 U.S. 624, 628 (1977).

238. Plaintiff's liberty interest claim survives because he meets the stigma prong of the test by alleging that defendant Pickel criticized his comments and accused him of perjury in the media, and he meets the "plus" prong because defendant Pickel's comments came in connection with his termination. Plaintiff's liberty interest claim therefore survives defendants' motion.

### 3. Section 1985(3) and Section 1986 Claims

Plaintiff alleges that defendants engaged in a conspiracy to deprive him of his equal protection rights. In order to present a valid claim for such a harm under Section 1985(3), plaintiff must allege a conspiracy to deprive any person or class of persons of the equal protection of the laws based on some "racial, or perhaps otherwise class-based, invidiously discriminatory animus." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Here, plaintiff contends that he was a "class of one" whom defendants conspired against in retaliation for his defense of racial minority Easton employees.

While plaintiff may and does assert an equal protection claim based on a "class of one,"[7] his Section 1985(3) claim fails because a "class of one" is not the type of group that could legitimately be subjected to class-based animus. Ferrone v. Onorato, 439 F. Supp. 2d 442, 452-53 (W.D. Pa. 2006). See also Cataldo v. Moses, 2005 WL 705359, at *19 (D.N.J. Mar. 29, 2005) (holding that a "class of one" theory cannot support a Section 1985(3) action); Jackson v. Gordon, 145 Fed. Appx. 774, 778 (3d Cir. 2005) (unpublished, not precedential) (affirming the dismissal of a Section 1985(3) action where plaintiff also alleged a "class of one" equal

---

[7] The Supreme Court held that a plaintiff may go forward with an equal protection claim under a "class of one" theory in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).

protection violation).[8]

While it is true that Section 1985(3) is designed to remedy conspiracies directed at racial minorities and "those who championed their cause," United Bhd. of Carpenters and Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 836 (1983), it is not clear that this particular piece of Supreme Court dictum is any more binding than the Third Circuit comment that plaintiff must "*be the victim* of an injury he or she seeks to remedy by means of § 1985(3)." Farber v. City of Paterson, 440 F.3d 131, 136 (3d Cir. 2006) (emphasis supplied).  Plaintiff could not have been the victim of any conduct motivated by a racially discriminatory animus because plaintiff is not a member of a racial minority.  While clearly Supreme Court precedent is of greater authority than Third Circuit precedent, in seeking analytical guidance from the two cases, we note that Farber is a more recent case than Scott, and speaks directly to the interplay between a plaintiff's equal protection and Section 1985(3) claims where plaintiff is not a direct victim of the harm the conspirators inflicted.  In any event, a Section 1985(3) class "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." Id. (*citing* Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993)).  To hold otherwise would allow "innumerable tort plaintiffs...to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with." Id. (*citing* Bray).

---

[8] The Court does not cite these decisions as binding authority, but their facts and analysis guide the Court as persuasive authority. See, e.g., United States v. Thornton, 306 F.3d 1355, 1358 n.1 (3d Cir. 2002) (citing four unpublished, non-precedential opinions from other circuits as persuasive authority); City of Newark v. Dep't of Labor, 2 F.3d 31, 33 n.3 (3d Cir. 1993) (considering unpublished authority's analysis of factually identical scenario persuasive); Salamone v. Dep't of Homeland Sec., 2004 WL 503544, at *4 (E.D. Pa. Mar.12, 2004) (noting that "[u]npublished opinions lack precedential authority under [Local Appellate Rule] 28.3(a) and [Internal Operating Procedure] 5.3 (3d Cir. 2003), yet still provide persuasive guidance.").

Plaintiff's Section 1986 claim for failure to prevent a Section 1985(3) conspiracy fails because his underlying Section 1985(3) claim fails. <u>Bieros v. Nicola</u>, 839 F. Supp. 332, 336 (E.D. Pa. 1993).

    4.    <u>Emotional Distress Claims</u>

Plaintiff alleges that he is entitled to damages for both intentional and negligent infliction of emotional distress, and defendants challenge both counts on the grounds that plaintiff failed to allege physical harm as a result of his emotional distress. As plaintiff points out, however, he did in fact claim that he suffered "physical and mental pain and suffering." <u>Compl.</u> at ¶ 183.[9]

Defendants' also argue that the Pennsylvania Workers's Compensation Act, Pa. Cons. Stat. § 411, preempts plaintiff's emotional distress claims. But the Act does not bar emotional distress actions "where the injury to the employee arose from harassment which was personal in nature and not part of the proper employer-employee relationship." <u>Hoy v. Angelone</u>, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). The Worker's Compensation Act has no preemptive effect here because plaintiff alleges that defendants' harassed him personally, and plaintiff's emotional distress claims survive.

An appropriate order accompanies this Memorandum Opinion.

---

[9] Defendants' error illustrates another pitfall of proceeding with such a lengthy complaint.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH E. WELSH, ET AL. | : | |
| Plaintiffs | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. 05-CV-6838 |
| LINDA MALE, ET AL. | : | |
| Defendants | : | |

## ORDER

AND NOW, this 21st day of March, 2007, it is hereby ORDERED that:

1. Defendants' Motion to Dismiss (Document No. 3) and Defendant Philip Mitman's Motion to Dismiss (Document No. 6) are GRANTED IN PART and DENIED IN PART as described in the above Memorandum Opinion.

2. Defendants' Request to Strike embedded in their Motion to Dismiss is GRANTED. The Clerk of Court is directed to remove the Complaint from the docket.

3. The Clerk of Court is directed to lift the stay in this matter.

4. Plaintiffs shall have twenty days from the date of this order to file an amended Complaint consistent with the Court's Memorandum Opinion.

BY THE COURT:

/s/ Thomas M. Golden
THOMAS M. GOLDEN, J.